**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON**

| | |
|---|---|
| NATURAL EXTRACTION SYSTEMS, LLC<br><br>                    Plaintiff,<br><br>vs.<br><br>STIIIZY INC., STIIIZY IP LLC, FOCUS GROUP ENTERPRISES, LLC d/b/a STIIIZY, and FERNDALE MAIZE, LLC d/b/a STIIIZY<br>                    Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Natural Extraction Systems, LLC, ("NES" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants STIIIZY INC. ("Stiiizy"), STIIIZY IP LLC ("Stiiizy IP"), Focus Group Enterprises, LLC, d/b/a Stiiizy ("Focus"), and Ferndale Maize, LLC, d/b/a Stiiizy ("Ferndale") (collectively, "Defendants") for patent infringement and alleges as follows:

## NATURE OF THE ACTION

1.      This action for patent infringement arises out of the infringement of NES's U.S. Patent No. 10,669,248 ("the '248 patent," Exhibit A), U.S. Patent No. 11,643,402 ("the '402 patent," Exhibit B), U.S. Patent No. 12,297,181 ("the '181 patent," Exhibit C), and U.S. Patent No. 12,420,214 ("the '214 patent," Exhibit D) (collectively the "Asserted Patents") by Defendants. NES brings this action to compel Defendants both to compensate NES for their infringement of the Asserted Patents and to cease their ongoing and continuous infringement of the Asserted Patents.

2.     NES is a Colorado-based natural product extraction and distillation technologies company founded by Inventor C. Russell Thomas in 2012.

3.     Mr. Thomas founded NES to develop safe, non-addictive, all-natural alternatives to prescription opiates based upon the promising potential of cannabinoids to treat pain, inflammation, and related conditions.

4.     By 2012, eighteen U.S. states had legalized medical cannabis, but orally consumable medicinal cannabis products were typically prepared by extracting cannabinoids from cannabis with fuel-grade butane.

5.     Mr. Thomas was concerned about the potentially carcinogenic nature of butane extracts. He performed initial research on rosemary distillates to develop clean and safe alternatives to butane extracts by inventing methods to (i) evaporate aromatic molecules from plant material, (ii) physically separate the evaporated aromatic molecules from the plant material, and (iii) recondense the aromatic molecules into a distillate.

6.     The Farm Bill of 2018 legalized consumer products containing cannabidiol ("CBD") derived from industrial hemp containing less than 0.3% tetrahydrocannabinol ("THC"). Mr. Thomas recognized that products made from hemp oils could be safe, non-addictive, all-natural alternatives to prescription opiates for treating pain.

7.     Mr. Thomas adapted his research on rosemary to distill hemp oils and to manufacture wholesale and retail products from the distillates to treat pain and inflammation.

8.     NES filed U.S. Provisional Patent Application No. 62/717,235 ("the '235 application") on August 10, 2018, which discloses methods to distill and activate hemp oils in a single process step. Each of the Asserted Patents claims priority to the '235 application.

9.      Each of the Asserted Patents discloses methods to distill and activate cannabinoids in a single process step, including the activation of cannabidiolic acid ("CBDA") into CBD and the activation of tetrahydrocannabinolic acid ("THCA") into THC.

10.      Upon practicing the methods disclosed in the Asserted Patents, NES received consumer feedback that its resultant hemp oils displayed superior efficacy at treating pain, inflammation, and other conditions relative to competing cannabinoid products. NES subsequently became the world's leading manufacturer of certified USDA organic hemp extract by volume sold.

11.      Stiiizy is one of the largest privately-held cannabis operators in the United States, with active operations in California, Nevada, Arizona, and Michigan. *See* Ex. Z.

12.      On information and belief, Defendants manufacture over 350 kilograms of cannabis distillate per week.

13.      Together, Defendants generate hundreds of millions of dollars in annual revenue by selling cannabis products, including products made with cannabis distillate. *See id*.

14.      NES derives revenue by licensing its intellectual property.

15.      Defendants do not license any intellectual property owned by NES.

16.      Defendants' success in the cannabis market comes at the expense of NES and its intellectual property rights.

17.      Defendants use processes that fall within the scope of various claims of each of the Asserted Patents.

18.      Defendants incorporate cannabis distillate made by processes that infringe various claims of the Asserted Patents into cannabis products, such as vape pods and edibles, that Defendants market and sell to consumers in Michigan and throughout the United States.

19.     The sale of products made with cannabis distillate generates hundreds of millions of dollars in annual revenue for Defendants without any compensation to NES for the use of its intellectual property.

20.     NES brings this lawsuit seeking compensation that it is rightfully owed for the unauthorized use of its patented technology by Defendants and an injunction that enjoins Defendants from further unauthorized use of the patented technology.

## THE PARTIES

21.     Plaintiff NES is a limited liability company organized and existing under the laws of the State of Colorado, having a principal place of business in Boulder, Colorado.

22.     On information and belief, Defendant Focus is a limited liability company organized and existing under the laws of the State of Michigan, having a principal place of business at 642 E. 9 Mile Rd. Suite 1B, Ferndale, Michigan 48220.

23.     On information and belief, Defendant Focus has a resident agent registered with the Michigan Secretary of State at 336 W. First Street, Suite 113, Flint, Michigan 48502.

24.     On information and belief, Defendant Focus operates retail locations in this District at 642 E. 9 Mile Rd., Suite 1B, Ferndale, Michigan 48220, as well as at 5303 Portage Rd., Kalamazoo, Michigan 49002, and at 859 Capital Ave. SW, Battle Creek, Michigan 49015.

25.     On information and belief, Defendant Ferndale is a limited liability company organized and existing under the laws of the State of Michigan, having a principal place of business at 163 Premier Dr., Orion Charter Township, Michigan 48359.

26.     On information and belief, Defendant Ferndale has a resident agent registered with the Michigan Secretary of State at 336 W. First Street, Suite 113, Flint, Michigan 48502.

27.     On information and belief, Defendant Ferndale operates a cannabis processing facility located in this District at 163 Premier Dr., Orion Charter Township, Michigan 48359. Ex. F, Ex. AD, Ex. AH.

28.     On information and belief, Defendant Stiiizy IP is a limited liability company organized and existing under the laws of the State of California, having a principal place of business at 728 E. Commercial St, Los Angeles, California 90012. Ex. AA.

29.     On information and belief, the California Secretary of State lists the "principal address" and "street address" of Defendant Stiiizy IP as 728 E. Commercial St, Los Angeles, California 90012, and the "mailing address" of Defendant Stiiizy IP as 2001 S. Alameda St, Los Angeles, California 90058. *Id.*

30.     On information and belief, Defendant Stiiizy is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 2001 S. Alameda St, Los Angeles, California 90058.

31.     On information and belief, the California corporation Shryne Group, Inc. ("SGI") incorporated Stiiizy in Delaware in March 2023, as a wholly-owned subsidiary, and SGI then executed a merger agreement with Stiiizy, also in March 2023, such that Stiiizy survived and SGI ceased to exist thereby converting the California corporation SGI into the Delaware corporation Stiiizy.

32.     On information and belief, the California Secretary of State lists both the "principal address" and the "mailing address" of Stiiizy as 2001 S. Alameda St, Los Angeles, California 90058.

33.     On information and belief, Stiiizy manages over fifty different subsidiaries from 728 E. Commercial St, Los Angeles, California 90012, including Stiiizy IP, Ferndale, Focus, the

California limited liability company SGI Michigan LLC, which conducts business in Michigan, and the California limited liability company SGI Management LLC, which is the Manager of SGI Michigan LLC. *See, e.g.*, *id*.

34.     On information and belief, Stiiizy IP is a subsidiary of Stiiizy. *See id*.

35.     On information and belief, one or more officers, employees, and agents of Stiiizy and Stiiizy IP control Focus.

36.     On information and belief, one or more officers, employees, and agents of Stiiizy and Stiiizy IP control Ferndale.

37.     On information and belief, Focus and Ferndale are subsidiaries of Stiiizy. *See* Ex. H, Ex. AB; *see also* Ex. I.

38.     On information and belief, Defendant Stiiizy is a holding company that develops, produces, offers for sale, and sells cannabis products through licensees and subsidiaries, including Focus and Ferndale, in the State of Michigan and in the Eastern District of Michigan.

## <u>JURISDICTION AND VENUE</u>

39.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-38 as though fully set forth herein.

40.     This action for patent infringement arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

41.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

42.     This Court has personal jurisdiction over Defendants because each maintains sufficient minimum contacts with the forum as a result of business conducted within the State of Michigan and within the Eastern District of Michigan. This Court also has personal jurisdiction

over the Defendants because each—either directly or through subsidiaries and/or intermediaries—practices methods that infringe claims of the Asserted Patents in Michigan and in this District and makes, uses, offers for sale, sells, advertises, makes available, instructs others to use, and/or markets products made by infringing methods in Michigan and in this District.

43.     This Court has personal jurisdiction over Focus because Focus maintains systematic and continuous contacts with Michigan, it purposefully availed itself of the privileges of conducting business in Michigan, and it sought the protection and benefits of the laws of Michigan, and thus, Focus subjected itself to personal jurisdiction in Michigan.

44.     This Court also has personal jurisdiction over Focus because Focus committed acts of infringement of claims of the Asserted Patents in Michigan and in this District.

45.     Venue is proper in this District under 28 U.S.C. § 1400 as to Focus because Focus (1) maintains at least one physical, regular, and established place of business in this District and (2) committed acts of direct infringement in this District by practicing processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and/or by selling products made by processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(g).

46.     Focus has a registered agent for service of process in Michigan at 336 W. First Street, Suite 113, Flint, Michigan 48502.

47.     Focus does business in Michigan. It operates "Adult-Use Establishment" cannabis dispensaries in Michigan that are licensed by the Michigan Cannabis Regulatory Agency ("CRA"). *See* Ex. F, Ex. J, Ex. P.

48.     Focus maintains several physical, permanent, regular, and established places of business in Michigan. Focus operates at least three Stiiizy-branded dispensaries across the state. Ex. H.

49.     Focus maintains at least one physical, permanent, regular, and established place of business in this District, including the "Stiiizy Ferndale" dispensary located at 642 E. 9 Mile Rd. Suite 1B, Ferndale, Michigan 48220. Ex. E, Ex. J.

50.     On information and belief, Focus makes, uses, markets, offers for sale, sells, and/or distributes cannabis products, including cannabis distillate-containing products made by processes that infringe claims of the Asserted Patents, at its dispensaries throughout Michigan including in this District at its "Stiiizy Ferndale" dispensary. Thus, Focus committed infringing acts in Michigan and in this District.

51.     On information and belief, Focus has numerous employees who work in Michigan at Focus's physical places of business, including in this District at the "Stiiizy Ferndale" dispensary. *See* Ex. N, Ex. AI.

52.     Focus is a subsidiary and alter ego of Stiiizy. *See* Ex. H, Ex. AB.

53.     On information and belief, Ferndale purchased Focus in 2021, such that Focus became a subsidiary of Stiiizy.

54.     On information and belief, officers, employees, and agents of Stiiizy and/or Stiiizy IP control Focus from offices in California. *See, e.g.*, Ex. AC.

55.     Focus operates Provisioning Centers under the name Stiiizy in Michigan. *See* Ex. AC.

56.     Stiiizy identifies three Provisioning Centers that Focus operates in Michigan as its own. *See* Ex. E.

57.     This Court has personal jurisdiction over Ferndale because Ferndale maintains systematic and continuous contacts with Michigan, it purposefully availed itself of the privileges of conducting business in Michigan, and it sought the protection and benefits of the laws of Michigan, and thus, Ferndale subjected itself to personal jurisdiction in Michigan.

58.     This Court also has personal jurisdiction over Ferndale because Ferndale committed acts of infringement of claims of the Asserted Patents in Michigan and in this District.

59.     Venue is proper in this District under 28 U.S.C. § 1400 as to Ferndale because Ferndale (1) maintains at least one physical, regular, and established place of business in this District and (2) committed acts of direct infringement in this District by practicing processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and/or by selling products made by processes that infringe the Asserted Patents in this District under 35 U.S.C. § 271(g).

60.     Ferndale has a registered agent for service of process in Michigan at 336 W. First Street, Suite 113, Flint, Michigan 48502.

61.     Ferndale is a licensed cannabis processor in Michigan regulated by the Michigan CRA. Ex. F, Ex. O.

62.     Ferndale maintains at least one physical, permanent, regular, and established place of business in Michigan in this District, including its processing facility at 163 Premier Dr., Orion Township, Michigan 48359.

63.     On information and belief, Ferndale also sells, offers for sale, and/or distributes products, including products made by processes that infringe the Asserted Patents, through several "pick up partners" across the state, including in this District, for example, Jailhouse Cannabis – Mancelona located at 101 E. State St., Mancelona, Michigan 49659. *See* Ex. L.

64.     On information and belief, Ferndale manufactures products containing cannabis distillate by practicing processes that infringe claims of the Asserted Patents in Michigan, including in this District, for example, at its processing facility located at 163 Premier Dr., Orion Township, Michigan 48359. Ex. F.

65.     Ferndale makes, uses, markets, offers for sale, sells, and/or distributes cannabis products, including cannabis distillate-containing products made by processes that infringe claims of the Asserted Patents at its processing facility located in this District, and sells and/or distributes cannabis products, including cannabis distillate-containing products made by processes that infringe the Asserted Patents, to dispensaries in this District including the "Stiiizy Ferndale" dispensary. Thus, Ferndale committed infringing acts in Michigan and in this District.

66.     Ferndale has numerous employees who work in Michigan at Ferndale's physical places of business, including in this District at 163 Premier Dr., Orion Township, Michigan 48359. *See*, Ex. AD, Ex. AH, Ex. AI.

67.     Ferndale is a subsidiary and alter ego of Stiiizy. *See* Ex. AD.

68.     On information and belief, Ferndale either conducts business or previously conducted business under the name Stiiizy in Michigan. *See id.*, Ex. AE.

69.     On information and belief, one or more officers, employees, and agents of Stiiizy and/or Stiiizy IP control Ferndale from offices in California. *See* Ex. AF, Ex. AG, Ex. AH.

70.     On information and belief, Ferndale makes Stiiizy-branded cannabis products and provides them to Focus. *See* Ex. AD, Ex. AH. Focus then sells the Stiiizy-branded cannabis products to consumers in Stiiizy-branded Provisioning Centers. *See* Ex. AI.

71.     Stiiizy IP is a subsidiary and alter ego of Stiiizy.

72.     On information and belief, Stiiizy IP owns trademarks to the Stiiizy brand.

73.     On information and belief, Stiiizy IP controls the nature and quality of goods that Ferndale makes and sells that bear the Stiiizy mark.

74.     On information and belief, Stiiizy IP controls the nature and quality of goods that Focus sells that bear the Stiiizy mark.

75.     On information and belief, Stiiizy IP owns trademarks registered with the U.S. Patent & Trademark Office that cover the name "Stiiizy" including TM 5,768,594 and TM 6,161,216, which protect vaporizers, and TM 7,969,392, which protect retail stores that feature smokers' accessories.

76.     On information and belief, Stiiizy IP filed for and obtained Michigan trademarks that protect a stylized depiction of the word "Stiiizy" in Michigan for use with (A) cannabis vaporizers and (B) batteries for cannabis vaporizers.

77.     On information and belief, Ferndale fills THC vape pens and vape pods with cannabis distillate and packages them in packaging that bears the Stiiizy mark, displays the text "WWW.STIIIZY.COM," and/or identifies the social media handle @STIIIZY. *See, e.g.*, Ex. AJ.

78.     On information and belief, Stiiizy operates the website WWW.STIIIZY.COM. Ex. AK.

79.     On information and belief, Stiiizy controls the social media handle @STIIIZY at least on the social media platform X.

80.     On information and belief, Ferndale fills and packages vape pods that are only compatible with Stiiizy-branded vaporizers that Stiiizy and Focus sell. *See* Ex. AL, Ex. AM.

81.     On information and belief, Stiiizy IP controls the nature and quality of THC vape pens and vape pods filled by Ferndale that bear the Stiiizy mark.

82.     On information and belief, Stiiizy and/or Stiiizy IP direct Ferndale to fill vape pods that bear the Stiiizy mark and that are only compatible with Stiiizy-branded vaporizers.

83.     On information and belief, Stiiizy and/or Stiiizy IP either directly provide Ferndale with empty THC vape pens and vape pods that bear the Stiiizy mark or indirectly provide them to Ferndale through an intermediary.

84.     On information and belief, Stiiizy and/or Stiiizy IP direct Ferndale to place verification stickers that bear the Stiiizy mark and a unique QR code on Stiiizy-branded products that Ferndale manufactures. *See* Ex. AJ.

85.     On information and belief, Stiiizy and/or Stiiizy IP either directly provide Ferndale with verification stickers that bear the Stiiizy mark and a unique QR code so that Ferndale can label Stiiizy-branded products with the verification stickers, or Stiiizy and/or Stiiizy IP indirectly provide them to Ferndale through an intermediary.

86.     On information and belief, Stiiizy and/or Stiiizy IP provide the only method(s) to verify Stiiizy-branded products in Michigan, for example, via the verify.stiiizy.com website, which allows individuals who purchase Stiiizy-branded products in Michigan to enter a unique QR code on a verification sticker into the website to verify that the product that bears the verification sticker was manufactured in Michigan in accordance with processes controlled by Stiiizy IP.

87.     On information and belief, Focus operates Stiiizy-branded retail stores that sell THC vape pens, vape pods, vaporizers (also known as batteries), and smokers' accessories that bear the Stiiizy mark, display the text "WWW.STIIIZY.COM," and/or identify the social media handle @STIIIZY.

88.     On information and belief, Stiiizy IP controls the nature and quality of the retail stores that Focus operates.

89. On information and belief, Stiiizy IP controls the nature and quality of vaporizers and smokers' accessories that Focus sells that bear the Stiiizy mark.

90. On information and belief, Stiiizy and/or Stiiizy IP direct Focus to sell vaporizers that bear the Stiiizy mark in the Stiiizy-branded retail stores that Focus operates.

91. On information and belief, Stiiizy and/or Stiiizy IP either directly provide Focus with the vaporizers that bear the Stiiizy mark to sell in the Stiiizy-branded retail stores that Focus operates or indirectly provide them to Focus through an intermediary.

92. On information and belief, Stiiizy is the Manager of Stiiizy IP. Ex. AA.

93. On information and belief, one or more of the managers, officers, and executives of Stiiizy are authorized to execute documents on behalf of Stiiizy IP. *See id*, Ex. AN.

94. On information and belief, one or more manager(s) and officer(s) of Stiiizy and/or Stiiizy IP are authorized to execute documents on behalf of Ferndale. *See* Ex. AF, Ex. AG, Ex. AH.

95. On information and belief, one or more manager(s) and officer(s) of Stiiizy and/or Stiiizy IP are authorized to execute documents on behalf of Focus.

96. According to the California Secretary of State website, the mailing address of Stiiizy IP is the same address as both the principal address and the mailing address of Stiiizy.

97. On information and belief, the correspondence address of Focus on file with the Michigan CRA is the same as the mailing address of Stiiizy IP and both the principal address and the mailing address of Stiiizy. *See* Ex. AC.

98. On information and belief, a correspondence address of Ferndale on file with the Michigan CRA includes the principal address of Stiiizy IP on file with the California Secretary of State. *See* Ex. AG. On information and belief, this address is the same address as a Stiiizy-branded

dispensary that is operated by the California corporation Ironworks Collective Inc. ("Ironworks"), which is controlled by Stiiizy and/or one or more officers of Stiiizy. Ex. AO. On information and belief, this address is the same address as the principal address and the street address of Eagle Bay Enterprises, Inc. ("Eagle Bay"), which is also controlled by Stiiizy and/or one or more officers of Stiiizy.

99.     On information and belief, Stiiizy and/or Stiiizy IP sponsor and attend events throughout Michigan such as at the 2025 Movement Music Festival in Detroit. According to an article on Stiiizy's website www.stiiizy.com dated June 25, 2025, "As a cannabis sponsor, we [Stiiizy] didn't just pull up—we went all in. We set up in three key zones across the weekend, making sure our presence was felt whether you were outside the gates or in the middle of the music." Ex. AP.

100.    On information and belief, Stiiizy hires employees in Michigan including in this District to coordinate and attend events that Stiiizy sponsors in Michigan including in this District. *See* Ex. R.

101.    On information and belief, Stiiizy and/or Stiiizy IP entered into agreements with various Michigan entities to manufacture and sell Stiiizy-branded products in Michigan including Heritage Farms Manistee, LLC ("Heritage"), which does business as Authentic 231, and/or Portage Acquisitions, INC. ("Portage"), which does business as Black Market, and which each fill and/or sell THC vape pens and vape pods that bear the Stiiizy mark, that display the text "WWW.STIIIZY.COM," that identify the social media handle @STIIIZY, and/or that are only compatible with Stiiizy-branded vaporizers. *See* Ex. AQ, Ex. AR, Ex. AS, Ex. AT, Ex. AU, Ex. AV.

102.     On information and belief, Stiiizy IP controls the nature and quality of the THC vape pens and vape pods that Heritage and/or Portage produce that bear the Stiiizy mark.

103.     On information and belief, Stiiizy and/or Stiiizy IP either directly provide empty Stiiizy-branded THC vape pens and vape pods to Heritage and/or Portage to fill with cannabis distillate, which Heritage and/or Portage then sell to dispensaries and/or consumers in Michigan, or Stiiizy and/or Stiiizy IP indirectly provide them through an intermediary. *See* Ex. AU, Ex. AV.

104.     On information and belief, Stiiizy and/or Stiiizy IP either directly provide Stiiizy-branded vaporizers to Heritage for use with the Stiiizy-branded vape pods that Heritage and/or Portage fill with cannabis distillate, which Heritage then sells to consumers in Michigan, or Stiiizy and/or Stiiizy IP indirectly provide Stiiizy-branded vaporizers to Heritage through an intermediary. *See* Ex. AT.

105.     On information and belief, Stiiizy and/or Stiiizy IP direct Heritage and/or Portage to place verification stickers on the Stiiizy-branded THC vape pens and vape pods that Heritage and/or Portage fill with cannabis distillate. *See* Ex. AQ.

106.     On information and belief, Stiiizy and/or Stiiizy IP either directly provide Heritage and/or Portage with verification stickers that include the Stiiizy mark and a unique QR code, or Stiiizy and/or Stiiizy IP indirectly provide them through an intermediary.

107.     This Court has personal jurisdiction over Stiiizy because it maintains systematic and continuous contacts with Michigan, it purposefully availed itself of the privileges of conducting business in Michigan, and it sought the protection and benefits of the laws of Michigan, and thus, Stiiizy subjected itself to personal jurisdiction in Michigan.

108.     This Court also has personal jurisdiction over Stiiizy, through its alter egos Focus and Ferndale, because they committed acts of infringement of claims of the Asserted Patents in Michigan and in this District.

109.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1400 as to Stiiizy because Stiiizy (1) maintains at least one physical, regular, and established place of business in this District through its subsidiaries and alter egos Focus and Ferndale and (2) committed acts of direct and/or induced infringement in this District by practicing or inducing the practice of processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and (b) and/or by selling or inducing the sale of products made by processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(g).

110.     On information and belief, both Focus and Ferndale conduct business as Stiiizy. *See* Ex. H, Ex. AC, Ex. AD, Ex. AE.

111.     On information and belief, Stiiizy does business throughout the U.S. under the brand "STIIIZY," including through the Stiiizy Ferndale dispensary that Focus operates in this District and the Orion Charter Township processing facility that Ferndale operates in this District. *See* Ex. G, Ex. AI.

112.     Focus states that it does business as Stiiizy. *See* Ex. H.

113.     The Michigan CRA recognizes that Focus does business under the name Stiiizy. Ex. F, Ex. AC.

114.     The Stiiizy website states that the cannabis Provisioning Centers that Focus operates in Michigan are Stiiizy retail locations. Ex. E.

115.     The President of Stiiizy stated that the STIIIZY Ferndale location that Focus operates in this District is a Stiiizy retail store. Ex. AW.

116. In a report that Focus filed with the Michigan CRA, Focus states that it does business as Stiiizy and characterizes its business operations in Michigan as those of Stiiizy. *See* Ex. H.

117. On information and belief, Focus and Ferndale do not operate their own websites. Focus maintains an online presence via the www.stiiizy.com website that Stiiizy operates. *See* Ex. E.

118. The www.stiiizy.com website that Stiiizy operates describes the retail stores that Focus operates in Michigan as Stiiizy's own "retail locations…open[ed] in Michigan." *See id.*

119. Stiiizy established Focus's and Ferndale's places of business in Michigan, including in this District, as its own places of business. *See id.*, Ex. AB.

120. Stiiizy repeatedly represented that it has a place of business in Michigan, including in this District. *See* Ex. E, Ex. AB, Ex. AW.

121. The www.stiiizy.com website that Stiiizy operates states, that STIIIZY is "the #1 cannabis brand in the Nation," it "leads cannabis sales in key markets including Arizona, California, Michigan, and Nevada," and it "expanded to Nevada, Arizona, Illinois and Michigan to meet growing demand." Ex. Z, Ex. E.

122. The www.stiiizy.com website that Stiiizy operates lists three locations in Michigan and identifies them as "Stiiizy Battle Creek," "Stiiizy Kalamazoo," and "Stiiizy Ferndale." Stiiizy therefore holds out three retail locations in Michigan, including the "Stiiizy Ferndale" location that Focus operates in this District, as ***its own*** "Michigan dispensaries." *See* Ex. E.

123. Stiiizy published a press release related to the opening of its location in Battle Creek, Michigan entitled, "Stiiizy Makes It Three with Battle Creek" Ex. Q. Focus operates each

of the three Michigan locations mentioned in the press release, which include "Stiiizy Ferndale." *Id.*

124.    On information and belief, Stiiizy directs Ferndale to process, manufacture, and sell Stiiizy-branded products in Michigan, including in this District. Ferndale contracts with one or more third parties to test the composition and potency of Stiiizy-branded products, for example, "Stiiizy 2.5g PR Multipack-Skywalker OG," which, on information and belief, was manufactured in Michigan and in this District under the Michigan CRA license that Ferndale holds. Ex. I.

125.    On information and belief, Stiiizy directs and controls the actions, sales, and services of Focus and Ferndale, and Stiiizy consented to Focus and Ferndale acting on its behalf in selling, offering to sell, and/or distributing products, including products that infringe the Asserted Patents in Michigan and in this District.

126.    Stiiizy recruits Michigan residents, directly and/or through its subsidiaries, for employment inside and outside Michigan. *See, e.g.,* Ex. R, Ex. AI; *see also* Ex. AD.

127.    On information and belief, Stiiizy controls the recruiting, hiring, training, compensation, and benefits of Focus and Ferndale employees through IGS Solutions LLC, a California limited liability company ("IGS"), which is a subsidiary of Stiiizy that performs professional employer organization ("PEO") services for Stiiizy, Focus, and Ferndale. *See, e.g.*, Ex. AX; *see also* Ex. AY, Ex. AZ.

128.    On information and belief, one or more officers, employees, and agents of SGI organized IGS under the name SGI Solutions LLC in 2019, and then subsequently changed its name from SGI Solutions LLC to IGS Solutions LLC to obfuscate the connection between IGS, SGI, and numerous entities that both (a) operate marijuana cultivation licenses, marijuana distributor licenses, and/or marijuana retailer licenses under the name SGI and (b) conduct

business as Stiiizy including SGI Suisun LLC, which does business as STIIIZY SUISUN; SGI Marina LLC, which does business as STIIIZY MARINA; SGI Benicia LLC, which does business as STIIIZY BENICIA; SGI Pacheco LLC, which does business as STIIIZY PACHECO; SGI Santa Rosa LLC, which does business as STIIIZY SANTA ROSA; SGI Brannan LLC, which does business as STIIIZY SoMa; SGI Wildomar LLC, which does business as STIIIZY WILDOMAR; and SGI Encinitas Ap LLC, which does business as STIIIZY Encinitas. On information and belief, Stiiizy controls the foregoing entities that both operate licenses under the name SGI and conduct business as Stiiizy either directly through one or more of its own officers, employees, and agents or indirectly through SGI Management LLC.

129.   On information and belief, SGI Management LLC is a subsidiary of Stiiizy that operates as a holding company.

130.   On information and belief, SGI Management LLC is the Manager of SGI Michigan LLC, which is a wholesaler that conducts business in Michigan.

131.   Through various employment websites, including the IGS website igshr.com and the "careers" section of Stiiizy's own website www.stiiizy.com/pages/careers, Stiiizy recruits employees to work at the retail locations that Focus operates in Michigan and at the processing facility that Ferndale operates in Michigan. Job postings listed by Stiiizy and IGS in Michigan include, but are not limited to, Production Associate at Ferndale and Sales Associate at Focus. *See* Ex. S, Ex. BA. Neither posting identifies either Ferndale or Focus; the job postings instead indicate that job seekers would be employed by Stiiizy. *See* Ex. S, Ex. BA.

132.   On information and belief, the CEO of Stiiizy serves as the Manager of IGS. *See* Ex. AZ. On information and belief, the CEO of Stiiizy is also the Manager and/or an authorized officer of Ferndale. *See* Ex. AF, Ex. AG, Ex. AH.

133.    On information and belief, IGS and/or the Human Resources Coordinator of IGS are agents of each of the California entities Stiiizy, SGI Management LLC, and SGI Michigan LLC, and are agents of each of the Michigan limited liability companies Focus, Ferndale, Stiiizy Michigan LLC, SGI Ferndale RE LLC, SGI Kalamazoo RE LLC, SGI Battle Creek RE LLC, and Shryne Orion I LLC. *See* Ex. BB, Ex. BC, Ex. BD, Ex. BE, Ex. BF, Ex. BG, Ex. BH, Ex. BI, Ex. BJ.

134.    On information and belief, a former SGI Manager of Legal Affairs organized each of SGI Ferndale RE LLC, SGI Kalamazoo RE LLC, SGI Battle Creek RE LLC, and Shryne Michigan RE LLC in Michigan on behalf of Stiiizy in 2021; a former Vice President of Stiiizy organized each of Ferndale, Shryne Orion I LLC, and Shryne Orion II LLC in Michigan on behalf of Stiiizy the same year; and a former Law Clerk of Stiiizy organized each of Shryne MIPQ I LLC, Shryne MIPQ II LLC, and Shryne MIPQ III LLC in Michigan on behalf of Stiiizy the following year. *See* Ex. BK, Ex. BL, Ex. BM, Ex. BN, Ex. BO, Ex. BP, Ex. BQ, Ex. BR, Ex. BS, Ex. BT, Ex. BU, Ex. BV, Ex. BW.

135.    On information and belief, Stiiizy has organized over two hundred different corporate entities including at least eleven different subsidiaries that Stiiizy organized as Michigan entities under Michigan law, *e.g.*, Stiiizy Michigan LLC (organized on September 9, 2019), Shryne Orion I LLC (organized on June 2, 2021), Shryne Orion II LLC (organized on June 2, 2021), Ferndale (organized on June 14, 2021), Shryne Michigan RE LLC (organized on October 15, 2021), SGI Ferndale RE LLC (organized on December 2, 2021), SGI Kalamazoo RE LLC (organized on December 2, 2021), SGI Battle Creek RE LLC (organized on December 2, 2021), Shryne MIPQ I LLC (organized on August 12, 2022), Shryne MIPQ II LLC (organized on August 12, 2022), and Shryne MIPQ III LLC (organized on August 12, 2022), and Stiiizy officially

operates at least one California entity in Michigan, *i.e.*, SGI Michigan LLC. *See* Ex. BL, Ex. BM, Ex. BN, Ex. BO, Ex. BQ, Ex. BR, Ex. BS, Ex. BU, Ex. BV, Ex. BW.

136.     On information and belief, Ferndale acquired Focus in 2021. Ex. BX.

137.     On information and belief, Stiiizy has operated at least a dozen different subsidiaries in Michigan in the past five years.

138.     On information and belief, Stiiizy owns real property in Michigan through its subsidiaries Shryne Michigan RE LLC, SGI Ferndale RE LLC, SGI Kalamazoo RE LLC, and/or SGI Battle Creek RE LLC, which Stiiizy acquired when Stiiizy merged with SGI in 2023.

139.     On information and belief, SGI Ferndale RE LLC owns real property situated in this District at 642 E. 9 Mile Rd. Suite 1B, Ferndale, Michigan 48220, where Focus operates Stiiizy Ferndale.

140.     On information and belief, SGI Ferndale RE LLC leases real property situated in this District to Defendant Focus.

141.     On information and belief, SGI Kalamazoo RE LLC owns real property situated at 5303 Portage Road, Kalamazoo, Michigan 49002, where Focus operates Stiiizy Kalamazoo.

142.     On information and belief, SGI Kalamazoo RE LLC leases real property situated in Michigan to Defendant Focus.

143.     On information and belief, SGI Battle Creek RE LLC owns real property situated at 859 Capital Ave. SW, Battle Creek, Michigan 49015, where Focus operates Stiiizy Battle Creek.

144.     On information and belief, SGI Battle Creek RE LLC leases real property situated in Michigan to Defendant Focus.

145.     On information and belief, Stiiizy sent its Director of Development to Pittsfield Charter Township in this District to lobby the Pittsfield Township Planning Commission to open

21

a Stiiizy-branded cannabis dispensary in this District that would be named "Stiiizy Pittsfield" and operated by Shryne Orion I LLC, a Michigan limited liability company. Ex. BY.

146. On information and belief, Stiiizy also lobbies the Michigan state government, including the Michigan CRA, to influence the legislation and/or promulgation of Michigan laws that regulate the manufacture and sale of Stiiizy-branded products in Michigan, including products that subsidiaries and licensees of Stiiizy make and sell in this District that infringe the Asserted Patents. *See* Ex. BZ.

147. The address of the CEO of Stiiizy, the principal address of Stiiizy, the mailing address of Stiiizy, the address of the Manager of IGS, the principal address of IGS, and the mailing address of IGS are the same as depicted in the records of the California Secretary of State, *i.e.*, 2001 S. Alameda St, Los Angeles, California 90058. The mailing address that the Michigan CRA uses to correspond with Focus is also the same. Ex. AC.

148. On information and belief, Stiiizy controls the hiring processes of both Focus and Ferndale. Job postings for Stiiizy's California locations, located in the "career" section of the Stiiizy and IGS websites, for example, have identical "descriptions" and "job functions" as the job postings found for Focus and Ferndale in Michigan. *Compare* Ex. T *with* Ex. U. The Michigan job posting even states, "[a]re you interested in working for the world's largest cannabis market with a footprint that covers the entire breadth of the state of California," and not, "the state of Michigan." Ex. U. Just as the Michigan job postings identify that Stiiizy would employ job seekers (and not Focus or Ferndale), the California job postings identify that Stiiizy would employ job seekers (and not, for example, SGI Santa Rosa LLC). *Compare* Ex. T *with* Ex. U.

149.     On information and belief, Stiiizy IP is an alter ego and subsidiary of Stiiizy. On information and belief, the CEO of Stiiizy represented to the State of Michigan in notarized documents that he is the CEO of Stiiizy IP.

150.     On information and belief, the CEO of Stiiizy is also the CEO of Stiiizy IP.

151.     On the information and belief, Stiiizy IP does business as Stiiizy.

152.     This Court has personal jurisdiction over Stiiizy IP, because it has systematic and continuous contacts with Michigan, it purposefully availed itself of the privileges of conducting business in Michigan, and it sought the protection and benefits of the laws of Michigan, and thus, Stiiizy IP subjected itself to personal jurisdiction in Michigan.

153.     This Court also has personal jurisdiction over Stiiizy IP, through its alter ego Stiiizy, because it committed acts of infringement of claims of the Asserted Patents in Michigan and in this District through its subsidiaries.

154.     Focus is an alter ego of Stiiizy IP at least because Stiiizy IP controls the nature and quality of the retail stores that Focus operates.

155.     Ferndale is an alter ego of Stiiizy IP at least because Stiiizy IP controls the nature and quality of the Stiiizy-branded products that Ferndale manufactures.

156.     On information and belief, Stiiizy is the manager of Stiiizy IP; the CEO of Stiiizy, the CEO of Stiiizy IP, and the Manager of Ferndale are the same natural person, who is also an authorized officer of Ferndale; Ferndale acquired Focus in 2021; and Stiiizy and/or Stiiizy IP presently control Focus either directly or through one or more subsidiaries of Stiiizy (such as through Ferndale and/or SGI Management LLC). Ex. AA, Ex. AF, Ex. AG, Ex. AH, Ex. BX.

157.     Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1400 as to Stiiizy IP because Stiiizy IP (1) maintains at least one physical, regular, and established place of

business in this District through its alter egos Focus and Ferndale and (2) committed acts of direct and/or induced infringement in this District by practicing or inducing the practice of processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(a) and (b) and/or by selling or inducing the sale of products made by processes that infringe claims of the Asserted Patents in this District under 35 U.S.C. § 271(g).

## THE ASSERTED PATENTS

158.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-157 as though fully set forth herein.

159.    The '248 patent, entitled "Methods to Chemically Modify Cannabinoids," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on June 2, 2020, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '248 patent is attached as Exhibit A.

160.    The '248 patent is valid and enforceable.

161.    Messrs. Thomas and DePalo assigned their inventions as disclosed in the '248 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '248 patent with the sole right to enforce the '248 patent and sue for infringement.

162.    The '402 patent, entitled "Gas Phase Methods to Decarboxylate Cannabinoids," was duly and legally issued by the USPTO on May 9, 2023, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '402 patent is attached as Exhibit B.

163.    The '402 patent is valid and enforceable.

164.    Messrs. Thomas and DePalo assigned their inventions as disclosed in the '402 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '402 patent with the sole right to enforce the '402 patent and sue for infringement.

165.    The '181 patent, entitled "Methods to Chemically Modify Cannabinoids," was duly and legally issued by the USPTO on May 13, 2025, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '181 patent is attached as Exhibit C.

166.    The '181 patent is valid and enforceable.

167.    Messrs. Thomas and DePalo assigned their inventions as disclosed in the '181 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '181 patent with the sole right to enforce the '181 patent and sue for infringement.

168.    The '214 patent, entitled "Methods to Produce Products Comprising Cannabinoids," was duly and legally issued by the USPTO on September 23, 2025, and names C. Russell Thomas and Matthew M. DePalo as inventors. A true and correct copy of the '214 patent is attached as Exhibit D.

169.    The '214 patent is valid and enforceable.

170.    Messrs. Thomas and DePalo assigned their inventions as disclosed in the '214 patent to NES. NES is the owner by assignment of all rights, title, and interest to and in the '214 patent with the sole right to enforce the '214 patent and sue for infringement.

## FACTUAL BACKGROUND & DEFENDANTS' INFRINGEMENT

### A.  The '248 Patent

171.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-170 as though fully set forth herein.

172.    Claim 1 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate, in which at least 95% of the native cannabinoid molecule is converted into the condensed cannabinoid molecule per mole; and

collecting the liquid distillate.

173.   Claim 2 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate, in which the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio greater than 100:1.

174.   Claim 8 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the cannabinoids comprise a native cannabinoid molecule, the native cannabinoid molecule comprises a carboxyl group, and the native cannabinoid molecule is in a liquid phase or a solid phase;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

175.   Claim 12 of the '248 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, in which the composition has a surface-area-to-volume ratio greater than 1000 per meter; the cannabinoids comprise a native cannabinoid molecule; the native cannabinoid molecule comprises a carboxyl group; and the native cannabinoid molecule is in a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

176.   On information and belief, Defendants make cannabis distillate using methods that satisfy each and every limitation of at least claims 1, 2, 8, and 12 of the '248 patent either literally or under the doctrine of equivalents.

177.    Cannabis flowers contain a variety of naturally occurring molecules called cannabinoids. CBDA is a native cannabinoid molecule found naturally in various strains of the cannabis plant. THCA is another native cannabinoid molecule found naturally in various strains of the cannabis plant.

178.    Defendants extract cannabis oil from cannabis plants. The resultant cannabis extracts contain the native cannabinoid molecules CBDA and/or THCA.

179.    CBDA lacks robust medicinal effects. CBDA may be converted into CBD by a chemical process called decarboxylation.

180.    THCA lacks robust psychoactive effects. THCA may be converted into the psychoactive molecule THC by decarboxylation. THC and its active metabolite 11-hydroxy-Δ9-tetrahydrocannabinol display psychoactive effects.

181.    CBDA and THCA each comprise a carboxyl group.

182.    Decarboxylation removes the carboxyl group from the CBDA molecule to form a CBD molecule and a carbon dioxide molecule.

183.    Decarboxylation removes the carboxyl group from the THCA molecule to form a THC molecule and a carbon dioxide molecule.

184.    Defendants make cannabis distillate with methods that modify the native cannabinoid molecule CBDA to form CBD and carbon dioxide and/or that modify the native cannabinoid molecule THCA to form THC and carbon dioxide.

185.    Cannabinol ("CBN") is a thermal oxidation product of THCA.

186.    CBN can cause drowsiness, paranoia, and confusion in humans.

187.    Decarboxylating THCA under certain conditions converts some of the THCA into CBN.

188.   On information and belief, Defendants make and sell products made with cannabis distillate containing greater than 80% THC by mass and less than 0.8% CBN by mass such as (A) the Watermelon Z All-in-One THC Pen, which is made and sold both in Michigan and throughout the United States including at the "House of Dank" dispensary in Saginaw, Michigan in this District, for example, and also at the "Lake Life Farms" dispensary in Cedar Springs, Michigan; (B) the King Louis XIII All-in-One THC Pen, which is made and sold both in Michigan and throughout the United States including at the "Mint Cannabis" dispensary in Monroe, Michigan in this District, for example, and also at the "31 Cannabis" dispensary in Grand Haven, Michigan; (C) the Do-Si-Dos THC Pod, which is made and sold both in Michigan and throughout the United States including at the "Exclusive" dispensary in Monroe, Michigan in this District, for example, and also at the "Lake Life Farms" dispensary in Lansing, Michigan; and (D) the Hardcore OG THC Pod, which is made and sold in Michigan and throughout the United States including at the "Green Acres" dispensary in Riverview, Michigan in this District, for example, and also at the "Lake Life Farms" dispensary in Cedar Springs, Michigan. Ex. CA, Ex. CB, Ex. CC, Ex. CD, Ex. CE, Ex. CF, Ex. CG, Ex. CH, Ex. CI, Ex. CJ, Ex. CK. The molar ratio of THC to CBN in such products is greater than 100:1.

189.   On information and belief, Defendants make and sell other products made with cannabis distillate containing greater than 80% THC by mass and less than 0.8% CBN by mass. For example, on information and belief, Defendants make and sell packages of "Mango Tango Gummies" in in Michigan and throughout the United States, which comprise cannabis distillate that contains about 200 milligrams of THC and less than 1 milligram of CBN per package. *See* Ex. CL; *see also* Ex. CM.

190.    On information and belief, Ironworks operates a dispensary named "STIIIZY Downtown LA" at the same address as the "principal address" and "street address" of Defendant Stiiizy IP, which is also an address for Stiiizy and also the California address where the Michigan CRA sends correspondence to Ferndale, *i.e.*, 728 E. Commercial St, Los Angeles, California 90012. *See* Ex. AO, Ex. AA, Ex. AG. On information and belief, Ironworks operates a cannabis manufacturing facility in the same building, *i.e.*, at 718 E. Commercial St, Los Angeles, California 90012. *See* Ex. CN. On information and belief, Ironworks is a subsidiary of Stiiizy that makes and sells products comprising distillate that contain greater than 80% THC, less than 0.8% CBN, and a molar ratio of THC to CBN of greater than 100:1. *See, e.g.*, Ex. CN. One such product is the Skywalker OG vape pod. *Id.*

191.    On information and belief, Stiiizy also makes and sells the Skywalker OG vape pod in Michigan. Focus sells Skywalker OG vape pods in Michigan, for example, at the Stiiizy Ferndale dispensary in this District. Ex. CO.

192.    On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to produce cannabis distillates that comprise greater than 80% THC and less than 0.8% CBN.

193.    On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to produce cannabis distillates that comprise a molar ratio of THC to CBN of greater than 100:1.

194.    The stiiizy.com website states, "[b]ecause it's highly refined and consistent, distillate is often used as the base for vape pens," and, "[a]t STIIIZY, we prioritize a premium and consistent cannabis experience." Ex. CP.

195.    On information and belief, to ensure the consistency of their products, Defendants perform the same or similar methods to make cannabis distillate in Michigan as their Michigan licensee Heritage. *Cf. id.*, Ex. AU, Ex. AV.

196.    On information and belief, Defendants Stiiizy and/or Stiiizy IP directed Heritage to use either the THC distillate manufacturing methods described by Heritage's Director of Production in Exhibit CQ or substantially similar methods to manufacture the vape oil that Stiiizy and/or Stiiizy IP licensed Heritage to make, for example, because Stiiizy IP must control the nature and quality of such products that bear the Stiiizy mark to continue to control the Stiiizy trademark and/or because Stiiizy derives value from the Stiiizy trademark by delivering consistent products that display superior effects than its competition.

197.    On information and belief, Stiiizy and/or Stiiizy IP directed Heritage to make cannabis distillate by performing wiped-film distillations. *See* Ex. CQ.

198.    On information and belief, to ensure the consistency of their products, Defendants perform the same or similar methods to make cannabis distillate in Michigan as their California affiliates perform.

199.    On information and belief, Defendants perform the same or similar methods to make cannabis distillate in Michigan as Ironworks performs in California.

200.    On information and belief, Defendants perform the same or similar methods to make cannabis distillate in Michigan as Eagle Bay performs in California.

201.    On information and belief, SGI purchased Eagle Bay by executing an agreement of merger in October 2022, in which the California corporation Shryne Bay Merger Sub, Inc., which was a wholly owned subsidiary of SGI, merged with Eagle Bay such that Eagle Bay survived and Shryne Bay Merger Sub, Inc. ceased to exist. *See* Ex. CR.

202.    On information and belief, Stiiizy acquired Eagle Bay when SGI executed a merger agreement with Stiiizy in March 2023.

203.    On information and belief, the CEO of Stiiizy is the CEO, CFO, and Secretary of Eagle Bay. *See* Ex. V.

204.    On information and belief, Eagle Bay does business as Procan Labs in California. *See* Ex. W.

205.    On information and belief, Eagle Bay operates one or more wiped-film distillation systems manufactured by the German company Verfahrenstechnische Anlagen GmbH & Co. KG ("VTA") and imported into the United States by Root Sciences LLC (Washington, United States). *See* Ex. X, Ex. Y.

206.    On information and belief, Defendants operate one or more wiped-film distillation systems to manufacture cannabis distillates in Michigan.

207.    On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule CBDA.

208.    On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule THCA.

209.    On information and belief, Defendants perform wiped-film distillation on compositions comprising cannabinoids that include CBDA and/or THCA to make cannabis distillate.

210.    On information and belief, Defendants manufacture cannabis distillates using processes that lack a separate decarboxylation step, in which a cannabinoid extract is heated above 212° Fahrenheit to convert THCA into THC prior to distillation.

211.    The input to Defendants' wiped-film distillation system is a liquid. *See* Ex. X.

212.    On information and belief, Defendants operate one or more wiped-film distillation systems by providing a composition that comprises liquid-phase CBDA and/or liquid-phase THCA.

213.    On information and belief, Defendants operate one or more wiped-film distillation systems by contacting compositions comprising cannabinoids with sufficient energy to evaporate cannabinoids (by heating cannabis extracts to an elevated temperature) such that the cannabinoids enter a gas phase as a vapor. *See id*.

214.    On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule CBDA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase, *i.e.*, CBD.

215.    On information and belief, Defendants contact compositions comprising cannabinoids with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule THCA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase, *i.e.*, THC.

216.    On information and belief, Defendants condense gas phase CBD and/or THC into a liquid distillate, which Defendants perform in a wiped-film distillation system by contacting the gas phase CBD and/or THC with a condenser. *See id*.

217.    The condensers in Defendants' wiped film distillation systems are heat sinks.

218.    On information and belief, Defendants collect distillate from one or more wiped-film distillation systems, which Defendants use to make consumer products that contain the distillate.

219.    On information and belief, Defendants make and sell products that comprise cannabis distillate containing THC and CBD and no detected THCA or CBDA, for example, Skywalker OG vape pods. *See* Ex. CN, Ex. CO.

220.    Thus, on information and belief, the distillation process used to make the distillate contained in these products converts at least 95% of the native cannabinoid molecule CBDA of the provided composition comprising cannabinoids into CBD and/or at least 95% of the native cannabinoid molecule THCA of the provided composition comprising cannabinoids into THC.

221.    On information and belief, Defendants make and sell products that contain distillate that comprises greater than 80% THC, less than 0.8% CBN, and a molar ratio of THC to CBN of greater than 100:1. *See* Ex. CB, Ex. CD, Ex. CE, Ex. CG, Ex. CJ.

222.    On information and belief, Defendants perform wiped-film distillation on compositions comprising cannabinoids to make cannabis distillate. *See* Ex. X.

223.    On information and belief, the wiped-film distillation systems that Defendants operate each comprise a mechanical wiper that spreads compositions comprising cannabinoids into a thin film across a heated surface.

224.    On information and belief, the heated surface of each wiped-film distillation system that Defendants operate comprises a cylindrical inner surface. *See id*.

225.    On information and belief, Defendants operate one or more wiped-film distillation systems by spreading compositions comprising cannabinoids into a thin film across the heated surface of each wiped-film distillation system. *See id*.

226.    On information and belief, each wiped-film distillation system operated by Defendants produces a film that has a thickness of 100 to 500 microns.

227. The film having a thickness of 100 to 500 microns on the cylindrical surface of the wiped-film distillation systems operated by Defendants has a surface-area-to-volume ratio that is greater than both 1000 per meter and 500 per meter.

## B. The '402 Patent

228. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-227 as though fully set forth herein.

229. Claim 1 of the '402 patent claims:

A method to chemically-modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition has a surface-area-to-volume ratio that is greater than 1000 per meter; the cannabinoids comprise a native cannabinoid molecule; the native cannabinoid molecule comprises a carboxyl group; and the native cannabinoid molecule is in either a liquid phase or a solid phase;

contacting the composition with sufficient energy to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

230. Claim 8 of the '402 patent depends from Claim 1 and recites:

contacting the composition with the sufficient energy comprises conductively heating the composition.

231. Claim 14 of the '402 patent depends from Claim 1 and recites:

the liquid distillate comprises one or both of cannabidiol and tetrahydrocannabinol at a combined concentration of greater than 6 percent by weight; and

the liquid distillate comprises cannabinol at a concentration of less than 0.8 percent by weight.

232.    Claim 15 of the '402 patent depends from Claim 1 and recites:

the liquid distillate comprises each of cannabidiol, tetrahydrocannabinol, and cannabigerol.

233.    Claim 18 of the '402 patent depends from Claim 1 and recites:

the native cannabinoid molecule is cannabigerolic acid;

the modified cannabinoid molecule is cannabigerol; and

the condensed cannabinoid molecule is cannabigerol.

234.    On information and belief, Defendants make cannabis distillate using methods that satisfy each and every limitation of at least claims 1, 8, 14, 15, and 18 of the '402 patent either literally or under the doctrine of equivalents.

235.    On information and belief, Defendants perform wiped-film distillations on compositions comprising cannabinoids to make cannabis distillate.

236.    On information and belief, the wiped-film distillation system(s) that Defendants operate each comprise a mechanical wiper that spreads cannabis extracts into a thin film across a heated surface.

237.    On information and belief, the heated surface of each wiped-film distillation system that Defendants operate comprises a cylindrical inner surface. *See* Ex. X.

238.    On information and belief, each wiped-film distillation system operated by Defendants produces a film that has a thickness of 100 to 500 microns.

239.    The film having a thickness of 100 to 500 microns on the cylindrical surface of the wiped-film distillation system operated by Defendants has a surface-area-to-volume ratio that is greater than 1000 per meter.

240.    Defendants' wiped-film distillation system transfers energy from its heated surface to the thin film of liquid that is spread across the heated surface. *See id.*

241. Transferring energy from a heated surface to a thin film of liquid that is spread across the heated surface is a form of conductive heating.

242. Defendants' wiped-film distillation systems transfer energy by conductive heating.

243. On information and belief, Defendants operate their wiped-film distillation systems to make liquid distillates that comprise CBD and/or THC at a combined concentration of greater than 6% by weight. *See, e.g.*, Ex. CB, Ex. CD, Ex. CE, Ex. CG, Ex. CJ, Ex. CN.

244. On information and belief, Defendants operate their wiped-film distillation systems to make liquid distillates that comprise CBN at a concentration of less than 0.8% by weight. *See, e.g.*, Ex. CB, Ex. CD, Ex. CE, Ex. CG, Ex. CJ, Ex. CN.

245. On information and belief, Defendants make cannabis distillates that contain greater than 80% THC, greater than 2% cannabigerol ("CBG"), and less than 1% cannabichromene ("CBC"). *See, e.g.*, Ex. CN.

246. Cannabigerolic acid ("CBGA") is a native cannabinoid molecule found naturally in various strains of the cannabis plant.

247. Defendants extract cannabis oil from cannabis plants. On information and belief, the resultant cannabis extracts contain the native cannabinoid molecule CBGA.

248. CBGA comprises a carboxyl group.

249. CBGA may be converted into CBG by a chemical process called decarboxylation. CBG displays psychoactive and medicinal properties.

250. Decarboxylation removes the carboxyl group from the CBGA molecule to form a CBG molecule and a carbon dioxide molecule.

251. Decarboxylating CBGA under certain conditions converts some of the CBGA into CBC.

252.    On information and belief, Defendants make cannabis distillate with processes that modify the native cannabinoid molecule CBGA to form CBG and carbon dioxide.

253.    On information and belief, compositions that Defendants provide for distillation comprise the native cannabinoid molecule CBGA.

254.    On information and belief, Defendants perform wiped-film distillation on compositions comprising cannabinoids that include CBGA to make cannabis distillate.

255.    On information and belief, Defendants operate one or more wiped-film distillation systems by providing compositions that comprise liquid-phase CBGA.

256.    On information and belief, Defendants contact compositions comprising cannabinoids that include CBGA with energy to evaporate cannabinoids, and the energy converts the native cannabinoid molecule CBGA into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase, *i.e.*, CBG.

257.    On information and belief, Defendants condense gas phase CBG into a liquid distillate, which Defendants perform in a wiped-film distillation system by contacting the gas phase CBG with a condenser. *See* Ex. X.

258.    On information and belief, Defendants make and sell products that comprise cannabis distillate that contains THC, CBD, and CBG, for example, Skywalker OG vape pods. *See* Ex. CN, Ex. CO.

259.    On information and belief, Defendants operate their wiped-film distillation systems to make liquid distillates that comprise each of CBD, THC, and CBG. *See, e.g.*, Ex. CN.

260.    On information and belief, Defendants make cannabis distillate using methods that satisfy all other elements of claims 1, 8, 14, 15, and 18 of the '402 patent for the reasons recited in Paragraph Nos. 177-227 above with respect to the '248 patent.

## C.  The '181 Patent

261.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1-260 as though fully set forth herein.

262.   Claim 1 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate,

wherein:

the method comprises converting less than 2 percent of the native cannabinoid molecule into cannabinol by mole;

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1; and

the method is performed such that the liquid distillate comprises cannabinol at a concentration of less than 0.8 percent by weight.

263.   Claim 2 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate,

wherein the method is performed such that:

the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1; and

the liquid distillate comprises the condensed cannabinoid molecule and delta-8-tetrahydrocannabinol at a molar ratio of greater than 300:1.

264.    Claim 3 of the '181 patent depends from Claim 2 and recites:

the native cannabinoid molecule is cannabidiolic acid;

the modified cannabinoid molecule is cannabidiol; and

the condensed cannabinoid molecule is cannabidiol.

265.    Claim 4 of the '181 patent depends from Claim 2 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol; and

the condensed cannabinoid molecule is tetrahydrocannabinol.

266.    Claim 9 of the '181 patent recites:

A method to chemically modify a cannabinoid molecule, comprising:

providing a composition comprising cannabinoids, wherein the composition comprises an extracted oil that was extracted from a plant material of the genus *Cannabis,* the extracted oil comprises the cannabinoids, the cannabinoids comprise a native cannabinoid molecule, and the native cannabinoid molecule comprises a carboxyl group;

coating a heated surface with the composition at a surface-area-to-volume ratio of the composition that is greater than 500 per meter, wherein the heated surface is a surface of a thin-film evaporator;

contacting the composition with sufficient energy from the heated surface to convert the native cannabinoid molecule into (i) a carbon dioxide molecule and (ii) a modified cannabinoid molecule in a gas phase;

contacting the modified cannabinoid molecule with a heat sink to condense the modified cannabinoid molecule into a condensed cannabinoid molecule in a liquid distillate; and

collecting the liquid distillate.

267.    Claim 19 of the '181 patent depends from Claim 9 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol;

the condensed cannabinoid molecule is tetrahydrocannabinol; and

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and cannabinol at a molar ratio of greater than 100:1.

268.    Claim 21 of the '181 patent depends from Claim 9 and recites:

the native cannabinoid molecule is tetrahydrocannabinolic acid;

the modified cannabinoid molecule is tetrahydrocannabinol;

the condensed cannabinoid molecule is tetrahydrocannabinol; and

the method is performed such that the liquid distillate comprises the condensed cannabinoid molecule and delta-8-tetrahydrocannabinol at a molar ratio of greater than 300:1.

269.    On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1-4, 9, 19, and 21 of the '181 patent either literally or under the doctrine of equivalents.

270.    Defendants extract cannabis oil from flowers of cannabis plants, which are plants of the genus *Cannabis*.

271.    On information and belief, Defendants provide extracted oils that were extracted from plant material of the genus *Cannabis*, which comprise cannabinoids, for distillation via wiped-film distillation systems. *See* Ex. X, Ex. Y; *see also* Ex. CQ.

272.    On information and belief, extracted oils that Defendants provide for distillation comprise THCA, and distillation of the extracted oils necessarily must convert less than 2% of the THCA into CBN by mole to arrive at compositions comprising greater than 80% THC and less than 0.8% CBN by mass.

273.    Delta-8-tetrahydrocannabinol ("Δ8-THC") is a thermal oxidation product of THC.

274.    On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patent to make cannabis distillates that contain greater than 84% THC and less than 0.28% Δ8-THC by mass. *See, e.g.*, Ex. CN. Such distillates comprise THC and Δ8-THC at a molar ratio of greater than 300:1.

275.    Defendants' wiped-film distillation system is a type of thin-film evaporator. *See* Ex. X.

276.    On information and belief, Defendants make cannabis distillate using methods that satisfy all other elements of claims 1-4, 9, 19, and 21 of the '181 patent for the reasons recited in Paragraph Nos. 177-227 above with respect to the '248 patent and in Paragraph Nos. 235-259 above with respect to the '402 patent.

## D.  **The '214 Patent**

277.   Plaintiff repeats and realleges the allegations contained in Paragraphs 1-276 as though fully set forth herein.

278.   Claim 1 of the '214 patent recites:

A method to produce a product comprising a cannabinoid, comprising:

(a) providing a composition comprising cannabinoids, wherein (i) the composition has a surface area, (ii) the composition comprises less than 15 percent water by weight, (iii) the composition comprises an oil, (iv) the oil comprises the cannabinoids, (v) the cannabinoids comprise a native cannabinoid molecule, (vi) the native cannabinoid molecule comprises a carboxyl group, (vii) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), (viii) the composition comprises at least 5 percent by weight of the cannabinoids, which are selected from tetrahydrocannabinolic acid (THCA), cannabidiolic acid (CBDA), tetrahydrocannabivarin carboxylic acid (THCVA), tetrahydrocannabinol (THC), cannabidiol (CBD), and tetrahydrocannabivarin (THCV), and (ix) the composition comprises at least 1 percent by weight tetrahydrocannabinolic acid (THCA);

(b) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (x) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, and (xi) the modified cannabinoid molecule is tetrahydrocannabinol (THC);

(c) condensing the modified cannabinoid molecule into a condensed cannabinoid molecule in a distillate, wherein (xii) the condensed cannabinoid molecule is tetrahydrocannabinol (THC); and

(d) collecting the distillate.

279.   Claim 2 of the '214 patent depends from Claim 1 and recites:

the distillate comprises condensed cannabinoids selected from tetrahydrocannabinol (THC), tetrahydrocannabivarin (THCV), cannabidiol (CBD), and cannabinol (CBN);

the condensed cannabinoids comprise tetrahydrocannabinol (THC) and cannabinol (CBN); and

the condensed cannabinoids comprise less than 2 percent cannabinol (CBN) by weight.

280. Claim 4 of the '214 patent depends from Claim 1 and recites:

providing a vaporizer cartridge comprising a chamber and a heating element; and

filling the chamber of the vaporizer cartridge with at least a portion of the distillate to create thermal communication between the heating element and the portion of the distillate.

281. Claim 5 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus Cannabis; and

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase.

282. Claim 6 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus *Cannabis*;

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase; and

the distillate comprises cannabinol (CBN) at a concentration of less than 2 percent by weight.

283.   Claim 8 of the '214 patent depends from Claim 1 and recites:

providing a distillation apparatus, wherein:

the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

the heated surface is a surface of the distillation apparatus;

contacting the composition with the heated surface comprises coating the heated surface with the composition;

the oil is an extracted oil from the genus *Cannabis*;

heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase;

the gas phase lacks sulfur dioxide at a concentration greater than 5 parts per million by volume;

the distillate comprises one or both of cannabidiol (CBD) and tetrahydrocannabinol (THC) at a combined concentration of greater than 60 percent by weight; and

the distillate comprises cannabinol (CBN) at a concentration of less than 0.5 percent by weight.

284.   Claim 11 of the '214 patent depends from Claim 1 and recites:

the distillate comprises one or both of cannabidiol (CBD) and tetrahydrocannabinol (THC) at a combined concentration of greater than 70 percent by weight; and

the distillate comprises cannabinol (CBN) at a concentration of less than 0.5 percent by weight.

285.   Claim 18 of the '214 patent recites:

A method to produce a product comprising a cannabinoid, comprising:

(a) providing a distillation apparatus, wherein (i) the distillation apparatus is a thin-film evaporator and/or a short-path distillation apparatus;

(b) providing a composition comprising cannabinoids, wherein (ii) the composition has a surface area, (iii) the composition comprises less than 15 percent water by weight, (iv) the composition comprises an oil, (v) the oil comprises the cannabinoids, (vi) the oil is an extracted oil from the genus *Cannabis*, (vii) the cannabinoids comprise a native cannabinoid molecule, (viii) the native cannabinoid molecule comprises a carboxyl group, (ix) the native cannabinoid molecule is tetrahydrocannabinolic acid (THCA), (x) the composition comprises at least 5 percent by weight of the cannabinoids, which are selected from tetrahydrocannabinolic acid (THCA), cannabidiolic acid (CBDA), tetrahydrocannabivarin carboxylic acid (THCVA), tetrahydrocannabinol (THC), cannabidiol (CBD), and tetrahydrocannabivarin (THCV), and (xi) the composition comprises at least 1 percent by weight tetrahydrocannabinolic acid (THCA);

(c) contacting the composition with a heated surface and exposing the surface area of the composition to a vacuum to convert the native cannabinoid molecule into a modified cannabinoid molecule in a gas phase, wherein (xii) the heated surface is a surface of the distillation apparatus, (xiii) contacting the composition with the heated surface comprises coating the heated surface with the composition, (xiv) contacting the composition with the heated surface heats the cannabinoids of the composition by conduction, (xv) heating the cannabinoids of the composition by conduction comprises contacting the composition with sufficient energy to convert the native cannabinoid molecule into (A) a carbon dioxide molecule and (B) the modified cannabinoid molecule in the gas phase, and (xvi) the modified cannabinoid molecule is tetrahydrocannabinol (THC);

(d) condensing the modified cannabinoid molecule into a condensed cannabinoid molecule in a distillate less than 360 seconds after converting the native cannabinoid molecule into the modified cannabinoid molecule in the gas phase, wherein (xvii) the condensed cannabinoid molecule is tetrahydrocannabinol (THC); and

(e) collecting the distillate.

286.   Claim 19 of the '214 patent depends from Claim 18 and recites:

the distillate comprises condensed cannabinoids selected from tetrahydrocannabinol (THC), cannabidiol (CBD), tetrahydrocannabivarin (THCV), and cannabinol (CBN); and

the condensed cannabinoids comprise less than 2 percent cannabinol (CBN) as a percentage by weight of the condensed cannabinoids.

287.   Claim 20 of the '214 patent depends from Claim 18 and recites:

providing a vaporizer cartridge comprising a chamber and a heating element; and

filling the chamber of the vaporizer cartridge with at least a portion of the distillate to create thermal communication between the heating element and the portion of the distillate.

288.   On information and belief, Defendants make cannabis distillate with methods that satisfy each and every limitation of at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent either literally or under the doctrine of equivalents.

289.   Defendants make products comprising cannabinoids according to methods by which Defendants introduce cannabis extracts (*i.e.*, compositions comprising cannabinoids) into wiped-film distillation systems.

290.   On information and belief, Defendants operate one or more wiped-film distillation systems, which are both thin-film evaporators and short-path distillation apparatuses, to manufacture cannabis distillates.

291.   The compositions comprising cannabinoids each have a surface area when introduced into Defendants' wiped-film distillation systems.

292.    On information and belief, the compositions comprising cannabinoids that Defendants introduce into their wiped-film distillation systems each comprise less than 15% water by weight.

293.    The compositions comprising cannabinoids that Defendants introduce into their short-path distillation systems are oils that Defendants extract from plants of the genus *Cannabis*. On information and belief, the oils comprise cannabinoids including the native cannabinoid molecule THCA, which comprises a carboxyl group.

294.    On information and belief, the compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems comprise at least 5% by weight of the cannabinoids THCA and THC.

295.    On information and belief, the compositions comprising cannabinoids that Defendants introduce into wiped-film distillation systems comprise at least 1% by weight THCA.

296.    On information and belief, Defendants practice the methods disclosed and claimed in the Asserted Patents to make distillates that comprise greater than 80% THC, less than 0.8% CBN, and a molar ratio of THC to CBN of at least 100:1.

297.    Defendants operate each wiped-film distillation system by contacting a composition comprising cannabinoids with a heated surface of the distillation system and exposing the surface area of composition comprising cannabinoids to a vacuum to contact the cannabis extract with sufficient energy to convert the liquid-phase native cannabinoid molecule THCA into carbon dioxide and the gas-phase modified cannabinoid molecule THC.

298.    On information and belief, the gas phase within each distillation system that Defendants operate consists predominantly of cannabinoids and carbon dioxide, and the gas phase lacks sulfur dioxide at a concentration greater than 5 parts per million by volume.

299. On information and belief, Defendants operate wiped-film distillation systems by coating a heated surface of each distillation system with a thin film of cannabis extract, which is performed by one or more wipers of the wiped-film distillation system.

300. Defendants heat cannabinoids in their wiped-film distillation systems by conduction.

301. Defendants operate wiped-film distillation systems by condensing gas-phase THC into liquid-phase THC (*i.e.*, a condensed cannabinoid molecule) in a distillate and then collecting the distillate.

302. On information and belief, Defendants operate wiped-film distillation systems by condensing gas-phase THC into liquid-phase THC less than 360 seconds after converting liquid-phase THCA into gas-phase THC.

303. On information and belief, distillates that Defendants collect from their wiped-film distillation systems comprise THC at a concentration of at least 80% by weight and CBN at a concentration of less than 0.5% CBN by weight. *See, e.g.*, Ex. CB, Ex. CD, Ex. CE, Ex. CG, Ex. CJ, Ex. CN.

304. On information and belief, Defendants provide vaporizer cartridges that each comprise a chamber and a heating element, and Defendants fill the chamber of each vaporizer cartridge with compositions comprising the distillate that they collect from their short-path distillation systems to create thermal communication between the heating element of the vaporizer cartridge and the distillate. *See, e.g.*, Ex. CB, Ex. CD.

305. On information and belief, Defendants make cannabis distillate using methods that satisfy all other elements of claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent for the reasons recited in Paragraph Nos. 177-227 above with respect to the '248 patent, in Paragraph Nos. 235-

259 above with respect to the '402 patent, and in Paragraph Nos. 270-275 above with respect to the '181 patent.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 10,669,248

306.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-305 as though fully set forth herein.

### A.    Direct Infringement (35 U.S.C. §§ 271(a) and (g))

307.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '248 patent under 35 U.S.C. § 271(a).

308.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '248 patent without authorization. Thus, Defendants are liable for infringement of the '248 patent under 35 U.S.C. § 271(g).

309.    On information and belief, Defendants Stiiizy and Stiiizy IP have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '248 patent, including at least claims 1, 2, 8, and 12, through their direct involvement in the infringing activities of their subsidiaries, alter egos, and licensees, including but not limited to their Michigan subsidiaries and alter egos Focus and Ferndale. Focus and Ferndale conduct activities

that constitute direct infringement of the '248 patent under 35 U.S.C. § 271(a) and (g). Stiiizy and Stiiizy IP are liable for the infringing acts of their subsidiaries, alter egos, and licensees including Focus and Ferndale under both alter ego and agency precedent, for example, because Stiiizy and its subsidiaries are essentially the same company, because Stiiizy has the right and ability to control its subsidiaries' infringing acts, for example, through its subsidiary Stiiizy IP, which controls the Stiiizy trademark, and because Stiiizy receives a direct financial benefit from the infringing acts of its subsidiaries including Focus and Ferndale.

310.    NES has suffered damages as a result of Defendants' infringement of the '248 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '248 patent.

## B.   Induced Infringement (35 U.S.C. § 271(b))

311.    Defendants have had actual knowledge of both the '248 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

312.    On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP, including Focus and Ferndale, perform processes to make cannabis distillate that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent under 35 U.S.C. § 271(a) and (g).

313.    On information and belief, Stiiizy and Stiiizy IP have actively, knowingly, and intentionally instructed, directed, and/or advised—and continue to actively, knowingly, and intentionally instruct, direct, and/or advise—their subsidiaries and alter egos, including Focus and Ferndale, to perform processes that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent.

51

314. On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced—and continue to actively, knowingly, and intentionally induce—their subsidiaries and alter egos, including Focus and Ferndale, to sell products made by processes that directly infringe at least claims 1, 2, 8, and 12 of the '248 patent in the United States.

315. On information and belief, Stiiizy and Stiiizy IP control the manufacture and sale of products by their subsidiaries and alter egos including Focus and Ferndale in Michigan.

316. On information and belief, Stiiizy and Stiiizy IP's Michigan subsidiaries and alter egos Focus and Ferndale sell products in Michigan, including in this District, that bear the names of Stiiizy proprietary product brands including, for example, Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies.

317. On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP located in various states make and sell many of the same products. For example, on information and belief, Ironworks is a California subsidiary and alter ego of Stiiizy that makes and sells each of Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies in California.

318. On information and belief, Stiiizy and Stiiizy IP direct and instruct their subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Stiiizy dictates.

319. On information and belief, Stiiizy and Stiiizy IP created, established, and enforce upon their subsidiaries and alter egos, including Focus and Ferndale, standard operating procedures that infringe claims of the '248 patent.

320.    Thus, on information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced, encouraged, and facilitated—and continue to actively, knowingly, and intentionally induce, encourage, and facilitate—their subsidiaries and alter egos, including Focus and Ferndale, to directly infringe at least claims 1, 2, 8, and 12 of the '248 patent under 35 U.S.C. § 271(b).

321.    NES has suffered damages as a result of Defendants' infringement of the '248 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '248 patent.

**COUNT II**
**INFRINGEMENT OF U.S. PATENT NO. 11,643,402**

322.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-321 as though fully set forth herein.

### A.  Direct Infringement (35 U.S.C. §§ 271(a) and (g))

323.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1, 8, 14, 15, and 18, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '402 patent under 35 U.S.C. § 271(a).

324.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1, 8, 14, 15, and 18, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a

process patented in the '402 patent without authorization. Thus, Defendants are liable for infringement of the '402 patent under 35 U.S.C. § 271(g).

325.    On information and belief, Defendants Stiiizy and Stiiizy IP have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '402 patent, including at least claims 1, 8, 14, 15, and 18, through their direct involvement in the infringing activities of their subsidiaries, alter egos, and licensees, including but not limited to their Michigan subsidiaries and alter egos Focus and Ferndale. Focus and Ferndale conduct activities that constitute direct infringement of the '402 patent under 35 U.S.C. § 271(a) and (g). Stiiizy and Stiiizy IP are liable for the infringing acts of their subsidiaries, alter egos, and licensees including Focus and Ferndale under both alter ego and agency precedent, for example, because Stiiizy and its subsidiaries are essentially the same company, because Stiiizy has the right and ability to control its subsidiaries' infringing acts, for example, through its subsidiary Stiiizy IP, which controls the Stiiizy trademark, and because Stiiizy receives a direct financial benefit from the infringing acts of its subsidiaries including Focus and Ferndale.

326.    NES has suffered damages as a result of Defendants' infringement of the '402 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '402 patent.

### B.  Induced Infringement (35 U.S.C. § 271(b))

327.    Defendants have had actual knowledge of both the '402 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

328.     On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP, including Focus and Ferndale, perform processes to make cannabis distillate that directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent under 35 U.S.C. § 271(a) and (g).

329.     On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally instructed, directed, and/or advised—and continue to actively, knowingly, and intentionally instruct, direct, and/or advise—their subsidiaries and alter egos, including Focus and Ferndale, to perform processes that directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent.

330.     On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced—and continue to actively, knowingly, and intentionally induce—their subsidiaries and alter egos, including Focus and Ferndale, to sell products made by processes that directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent in the United States.

331.     On information and belief, Stiiizy and Stiiizy IP control the manufacture and sale of products by their subsidiaries and alter egos including Focus and Ferndale in Michigan.

332.     On information and belief, Stiiizy and Stiiizy IP's Michigan subsidiaries and alter egos Focus and Ferndale sell products in Michigan, including in this District, that bear the names of Stiiizy proprietary product brands including, for example, Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies.

333.     On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP located in various states make and sell many of the same products. For example, on information and belief, Ironworks is a California subsidiary and alter ego of Stiiizy that makes and sells each of Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens,

Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies in California.

334. On information and belief, Stiiizy and Stiiizy IP direct and instruct their subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Stiiizy dictates.

335. On information and belief, Stiiizy and Stiiizy IP created, established, and enforce upon their subsidiaries and alter egos, including Focus and Ferndale, standard operating procedures that infringe the '402 patent.

336. Thus, on information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced, encouraged, and facilitated—and continue to actively, knowingly, and intentionally induce, encourage, and facilitate—their subsidiaries and alter egos, including Focus and Ferndale, to directly infringe at least claims 1, 8, 14, 15, and 18 of the '402 patent under 35 U.S.C. § 271(b).

337. NES has suffered damages as a result of Defendants' infringement of the '402 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '402 patent.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 12,297,181

338. Plaintiff repeats and realleges the allegations contained in Paragraphs 1-337 as though fully set forth herein.

### A. Direct Infringement (35 U.S.C. §§ 271(a) and (g))

339. For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more

claims of the '181 patent, including at least claims 1-4, 9, 19, and 21, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '181 patent under 35 U.S.C. § 271(a).

340.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1-4, 9, 19, and 21, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '181 patent without authorization. Thus, Defendants are liable for infringement of the '181 patent under 35 U.S.C. § 271(g).

341.    On information and belief, Defendants Stiiizy and Stiiizy IP have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '181 patent, including at least claims 1-4, 9, 19, and 21, through their direct involvement in the infringing activities of their subsidiaries, alter egos, and licensees, including but not limited to their Michigan subsidiaries and alter egos Focus and Ferndale. Focus and Ferndale conduct activities that constitute direct infringement of the '181 patent under 35 U.S.C. § 271(a) and (g). Stiiizy and Stiiizy IP are liable for the infringing acts of their subsidiaries, alter egos, and licensees including Focus and Ferndale, under both alter ego and agency precedent, for example, because Stiiizy and its subsidiaries are essentially the same company, because Stiiizy has the right and ability to control its subsidiaries' infringing acts, for example, through its subsidiary Stiiizy IP, which controls the Stiiizy trademark, and because Stiiizy receives a direct financial benefit from the infringing acts of its subsidiaries including Focus and Ferndale.

342.     NES has suffered damages as a result of Defendants' infringement of the '181 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '181 patent.

### B.   Induced Infringement (35 U.S.C. § 271(b))

343.     Defendants have had actual knowledge both of the '181 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

344.     On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP, including Focus and Ferndale, perform processes to make cannabis distillate that directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent under 35 U.S.C. § 271(a) and (g).

345.     On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally instructed, directed, and/or advised—and continue to actively, knowingly, and intentionally instruct, direct, and/or advise—their subsidiaries and alter egos, including Focus and Ferndale, to perform processes that directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent.

346.     On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced—and continue to actively, knowingly, and intentionally induce—their subsidiaries and alter egos, including Focus and Ferndale, to sell products made by processes that directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent in the United States.

347.     On information and belief, Stiiizy and Stiiizy IP control the manufacture and sale of products by their subsidiaries and alter egos including Focus and Ferndale in Michigan.

348.    On information and belief, Stiiizy and Stiiizy IP's Michigan subsidiaries and alter egos Focus and Ferndale sell products in Michigan, including in this District, that bear the names of Stiiizy proprietary product brands including, for example, Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies.

349.    On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP located in various states make and sell many of the same products. For example, on information and belief, Ironworks is a California subsidiary and alter ego of Stiiizy that makes and sells each of Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies in California.

350.    On information and belief, Stiiizy and Stiiizy IP direct and instruct their subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Stiiizy dictates.

351.    On information and belief, Stiiizy and Stiiizy IP created, established, and enforce upon their subsidiaries and alter egos, including Focus and Ferndale, standard operating procedures that infringe the '181 patent.

352.    Thus, on information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced, encouraged, and facilitated—and continue to actively, knowingly, and intentionally induce, encourage, and facilitate—their subsidiaries and alter egos, including Focus and Ferndale, to directly infringe at least claims 1-4, 9, 19, and 21 of the '181 patent under 35 U.S.C. § 271(b).

353.    NES has suffered damages as a result of Defendants' infringement of the '181 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '181 patent.

**COUNT IV**
**INFRINGEMENT OF U.S. PATENT NO. 12,420,214**

354.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1-353 as though fully set forth herein.

**A.    Direct Infringement (35 U.S.C. §§ 271(a) and (g))**

355.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 4-6, 8, 11, and 18-20, by practicing processes to make cannabis distillate that satisfy all of the limitations of said claims in the United States without authorization. Thus, Defendants are liable for infringement of the '214 patent under 35 U.S.C. § 271(a).

356.    For the reasons set forth in detail above, on information and belief, Defendants have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 4-6, 8, 11, and 18-20, by offering to sell, selling, and/or using within the United States cannabis-distillate-containing products that are made by a process patented in the '214 patent without authorization. Thus, Defendants are liable for infringement of the '214 patent under 35 U.S.C. § 271(g).

357.    On information and belief, Defendants Stiiizy and Stiiizy IP have been and are still directly infringing, literally and/or under the doctrine of equivalents, one or more claims of the '214 patent, including at least claims 1, 2, 4-6, 8, 11, and 18-20, through their direct involvement

in the infringing activities of their subsidiaries, alter egos, and licensees, including but not limited to their Michigan subsidiaries and alter egos Focus and Ferndale. Focus and Ferndale conduct activities that constitute direct infringement of the '214 patent under 35 U.S.C. § 271(a) and (g). Stiiizy and Stiiizy IP are liable for the infringing acts of their subsidiaries, alter egos, and licensees including Focus and Ferndale, under both alter ego and agency precedent, for example, because Stiiizy and its subsidiaries are essentially the same company, because Stiiizy has the right and ability to control its subsidiaries' infringing acts, for example, through its subsidiary Stiiizy IP, which controls the Stiiizy trademark, and because Stiiizy receives a direct financial benefit from the infringing acts of its subsidiaries including Focus and Ferndale.

358.    NES has suffered damages as a result of Defendants' infringement of the '214 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '214 patent.

### B.  Induced Infringement (35 U.S.C. § 271(b))

359.    Defendants have had actual knowledge both of the '214 patent and that their processes to make cannabis distillate infringe at least one claim thereof at least as of the filing date of this complaint.

360.    On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP, including Focus and Ferndale, perform processes to make cannabis distillate that directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent under 35 U.S.C. § 271(a) and (g).

361.    On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally instructed, directed, and/or advised—and continue to actively, knowingly, and intentionally instruct, direct, and/or advise—their subsidiaries and alter egos, including Focus and

Ferndale, to perform processes that directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent.

362.    On information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced—and continue to actively, knowingly, and intentionally induce—their subsidiaries and alter egos, including Focus and Ferndale, to sell products made by processes that directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent in the United States.

363.    On information and belief, Stiiizy and Stiiizy IP control the manufacture and sale of products by their subsidiaries and alter egos including Focus and Ferndale in Michigan.

364.    On information and belief, Stiiizy and Stiiizy IP's Michigan subsidiaries and alter egos Focus and Ferndale sell products in Michigan, including in this District, that bear the names of Stiiizy proprietary product brands including, for example, Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies.

365.    On information and belief, subsidiaries and alter egos of Stiiizy and Stiiizy IP located in various states make and sell many of the same products. For example, on information and belief, Ironworks is a California subsidiary and alter ego of Stiiizy that makes and sells each of Stiiizy Watermelon Z All-in-One THC pens, Stiiizy King Louis XIII All-in-One THC pens, Stiiizy Do-Si-Dos THC pods, Stiiizy Hardcore OG THC pods, Stiiizy Skywalker OG THC pods, and Stiiizy Mango Tango gummies in California.

366.    On information and belief, Stiiizy and Stiiizy IP direct and instruct their subsidiaries and alter egos to make these products in their respective states based upon procedures and standards that Stiiizy dictates.

367.    On information and belief, Stiiizy and Stiiizy IP created, established, and enforce upon their subsidiaries and alter egos, including Focus and Ferndale, standard operating procedures that infringe the '214 patent.

368.    Thus, on information and belief, Stiiizy and Stiiizy IP actively, knowingly, and intentionally induced, encouraged, and facilitated—and continue to actively, knowingly, and intentionally induce, encourage, and facilitate—their subsidiaries and alter egos, including Focus and Ferndale, to directly infringe at least claims 1, 2, 4-6, 8, 11, and 18-20 of the '214 patent under 35 U.S.C. § 271(b).

369.    NES has suffered damages as a result of Defendants' infringement of the '214 patent. In addition, NES will continue to suffer severe and irreparable harm unless this Court issues a permanent injunction prohibiting Defendants, their agents, servants, employees, and representatives, and all others acting in active concert therewith from infringing the '214 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

(a) A judgment that Defendants have infringed claims of the '248, '402, '181, and '214 patents;

(b) A judgment and order permanently enjoining Defendants, together with their directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, and other related business entities, and all persons in active concert or privity with them, and their successors and assigns, from directly or indirectly infringing claims of the '248, '402, '181, and '214 patents;

(c) A judgment that awards NES damages adequate to compensate for Defendants' infringing activities, including lost profits, but in no event less than a reasonable royalty, in

accordance with 35 U.S.C. § 284, including supplemental damages for any post-verdict infringement up until entry of final judgment with an accounting, as needed, together with pre-judgment and post-judgment interest on the damages awarded;

(d) In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '248, '402, '181, and '214 patents;

(e) A judgment declaring that Defendants' infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

(f) Finding that this case is exceptional under 35 U.S.C. § 285, and awarding NES its reasonable attorneys' fees incurred in connection with this action;

(g) Awarding NES its costs and expenses in this action; and

(h) Awarding NES such other and further relief as this Court deems just and appropriate.

Dated: January 12, 2026

Respectfully Submitted,

/s/ Justin B. Weiner
Justin B. Weiner
Patrick G. Seyferth
Bush Seyferth PLLC
100 West Big Beaver Road
Suite 400
Troy, MI 48084
seyferth@bsplaw.com
Telephone: (248) 822-7800
Facsimile: (248) 822-7000

Frank C. Cimino, Jr.
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
Telephone: (202) 344-4569
Facsimile: (202) 344-8300
fccimino@venable.com

William E. Solander

James R. Tyminski
Robert E. Bugg
VENABLE LLP
151 West 42nd Street
New York, NY 10036
Telephone: (212) 370-6241
Facsimile: (212) 307-5598
wsolander@venable.com
jtyminski@venable.com
rebugg@venable.com

*Attorneys for Plaintiff Natural Extraction
Systems, LLC*